**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr (183052)
robert@starrlaw.com
Adam Rose (210880)
adam@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HOWARD HOFFMAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY, a Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

1        Plaintiff Howard Hoffman ("Plaintiff"), individually and on behalf of all other members

2   of the public similarly situated, brings this action against Defendant Ford Motor Company,

3   ("Defendant" or "Ford"), upon information and belief, except as to his own actions, the

4   investigation of his counsel, and the facts that are a matter of public record, and alleges as

5   follows:

6                         **INTRODUCTION**

7        1.     This case relates to the model year 2010 through 2012 Ford Fusion Hybrid,

8   model year 2010 through 2011 Mercury Milan Hybrid and the model year 2011 through 2012

9   Mercury MKZ Hybrid vehicles for which 13 California Code of Regulations Sections 1962.1,

10   2035, 2037 and 2038 apply. (collectively referred to as "Class Vehicles'). This lawsuit is

11   brought on behalf of Plaintiff, and on behalf of all other people and entities, other than those

12   who are excluded as stated herein, who have purchased or leased Class Vehicles in the State of

13   California ("Class Members").

14        2.     Every Class Vehicle when sold or leased as a new vehicle came with warranty

15   coverage provided by Ford ("Ford Warranty"). The Ford Warranty was explained in a warranty

16   book ("Warranty Guide") published by Ford and given to the purchasers and lessors of new

17   Class Vehicles.

18        3.     Class Vehicles are Advanced Technology Partial Zero Emissions Vehicles

19   ("PZEV"). As such, the scope and length of the PZEV Ford Warranty as explained in the

20   Warranty Guide is applicable to the Class Vehicles.

21        4.     In addition to the Ford Warranty, the Class Vehicles also have warranty coverage

22   for emissions-related defects, as set forth in 13 California Code of Regulations Sections 1962.1,

23   2035, 2037, and 2038 ("Regulations"). The Regulations obligate Ford to provide a 15-year

24   150,000 mile warranty relating to emissions defects, with the exception that the warranty is 10

25   years or 100,000 miles for the propulsion battery ("Emissions Warranty").

26        5.     Ford has failed to comply with its obligations pursuant to the Emissions

27   Warranty, and pursuant to the Ford Warranty, resulting in Hoffman, and the Class Members

28   suffering damage. This lawsuit seeks to obtain a remedy for the resulting damage.

**BACKGROUND**

6.     The Regulations require that for PZEV vehicles, including all Class Vehicles, all defects in materials or workmanship that would cause a vehicle's on-board diagnostic malfunction indicator light to illuminate, that would increase emissions regulated by the State of California, and that would cause a vehicle to not pass a California smog check are warranted for 15 years or 150,000 miles, whichever occurs first. The coverage is reduced to 10 years for a zero-emission energy storage device used for traction power, such as a propulsion battery.

7.     Ford has failed to comply with the Regulations, with the Emissions Warranty, and even with the terms of its own Ford Warranty and Warranty Guide.

**JURISDICTION AND VENUE**

8.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class are citizens of a state different from that of Ford; and (ii) aggregating the claims of individual Class Members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) Ford is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

9.     This Court has personal jurisdiction over Ford because Ford has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Ford conducts business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**PARTIES**

11.     Plaintiff Howard Hoffman is, and at all times relevant hereto has been, a resident of Orange County.

CLASS ACTION COMPLAINT

12. Defendant Ford is a corporation doing business in the State of California. Ford distributes and sells vehicles in the state of California.

13. Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## SUBSTANTIVE ALLEGATIONS

14. On March 10, 2010, Plaintiff purchased a new 2010 Ford Fusion Hybrid, VIN 3FADP0L3XAR323692 (the "Hoffman Vehicle") from Villa Ford, located at 2550 North Tustin Avenue, Orange, California 92705. The Hoffman Vehicle came with the Ford Warranty and the Warranty Guide. Furthermore, the Hoffman Vehicle came with an Emissions Warranty.

15. The Hoffman Vehicle, and all Class Vehicles, when sold and at all times thereafter, had and have the same emissions defect. The defect is that, during the time period of warranty coverage stated by the Ford Warranty and the Emissions Warranty, the Class Vehicles experience a condition where the electric drive motor does not provide the torque used for acceleration that it was designed to provide. When this occurs, the Class Vehicles take longer to accelerate and rely more on the torque provided by the gasoline engine in order to accelerate ("Emissions Defect"). The Emissions Defect results in the Class Vehicles having increased emissions, and results in the Class Vehicles having diminished power when accelerating. Thus, the Emissions Defect is a covered defect under the Ford Warranty and the Emissions Warranty. Furthermore, the diminished power on acceleration results in the Class Vehicles being unsafe.

16. During the Emissions Warranty and the Ford Warranty, Ford has known of the Emissions Defect, and has known that it manifests during the warranty period. Numerous owners of Class Vehicles have complained about the Emissions Defect.

17. On October 3, 2019, Ford published Special Service Message 48238 ("SSM 48238") regarding the Emissions Defect. SSM 48238 reads, "Some 2010-2012 Fusion hybrid electric vehicle (HEV), 2010-2011 Milan HEV and 2011-2012 MKZ HEV vehicles may experience reduced electric vehicle operation and increased gasoline engine operation. Do not attempt repairs at this time. Engineering is investigating, monitor OASIS for updates."

18.     SSM 48238 was distributed by Ford to its authorized repair facilities. The reason Ford published SSM 48238 was to prevent its authorized repair facilities from charging Ford for attempting to diagnose or repair the Emissions Defect.

19.     Pursuant to SSM 48238, Ford has instructed its authorized repair facilities to not attempt to repair the Emissions Defect, even though the Emissions Defect renders the Class Vehicles unsafe and increases emissions.

20.     It is alleged on information and belief that Ford knows how to resolve the Emissions Defect and can provide a repair protocol to its authorized repair facilities. It is alleged on information and belief that one remedy to resolve the Emissions Defect is to change the propulsion battery, however this is an expensive repair. It is alleged on information and belief that Ford is searching for a less expensive remedy, and has thus instructed its authorized repair facilities, for now, not to attempt to repair the Emissions Defect.

21.     Ford has failed to provide an extended warranty relating to the Emissions Defect, and has failed to acknowledge to owners and lessees that the Emissions Defect exists. Thus, unless Ford changes its course of conduct, many owners and lessees will be denied warranty coverage once the applicable warranties expire.

22.     Ford has received numerous complaints regarding the Emissions Defect, directly from Class Members, and through its factory authorized repair facilities. Ford has refused to publicly acknowledge there is a problem. Furthermore, because of how Ford has handled this matter, Ford's factory authorized repair facilities repeatedly advise purchasers and lessees that there is no defect in the Class Vehicles. Additionally, Ford authorized repair facilities, knowing that they will not get paid by Ford to diagnose and repair the problem, actually charge consumers a fee to diagnose if there is a problem, then wrongfully deny that any problem exists.

23.     The Warranty Guide states that Ford and its authorized repair facilities are entitled to a reasonable time and a reasonable number of attempts within which to diagnose and repair any defect covered by the warranty (page 8 of Warranty Guide). The Warranty Guide states that consumers will not be charged for diagnosis, repair, replacement or adjustment of parts containing an emissions-related defect (page 15 of the Warranty Guide). The Warranty

Guide states that where a warrantable condition exists, Ford will repair the vehicle at no cost to the consumer including diagnosis, parts, and labor (page 15 of the Warranty Guide). The Warranty Guide states that if the diagnosis does not reveal a defect, the Defects Warranty does not apply (page 26 of the Warranty Guide).

24.   Ford is violating the terms of the Ford warranty, and the the Emissions Warranty, by instructing its authorized repair facilities to not attempt to repair a defect which not only effects emissions, but is a serious safety defect. On information and belief, Ford knows how to fix the Emissions Defect, but has instructed its factory authorized repair facilities to not attempt a repair relating to the Emissions Defect, while Ford searches for a less expensive repair.

25.   On January 20, 2020, at 73,951 miles, Hoffman took the Hoffman Vehicle to Fairway Ford ("Fairway"), a Ford authorized repair facility, for repairs ("January Repair Attempt"). The Hoffman repair records state, "Check vehicle seems to stay in gas mode and not switch to electric (fuel economy down as a result). Test all modules using IDS—no does present—reset MPG & monitored—fuel economy is what is posted for vehicle—specs 41 mpg city—hwy 36 mpg—results 42 mpg city—50 mpg hwy—vehicle operating as designed—engine turns on/off as designed. Hoffman was charged a diagnostic fee of $160.00 to evaluate his complaint.

26.   The January Repair Attempt should have been covered under the Emissions Warranty and Ford Warranty. Ford repudiated the warranty by refusing to cover the diagnostic fee, and by Ford's general instructions to factory authorized repair facilities to not make a repair attempt. Although Ford has identified the Emissions Defect, Ford has failed to provide factory authorized repair facilities with any reliable protocol to verify the Emissions Defect. This is because Ford does not want its factory authorized repair facilities to confirm the existence of the Emissions Defect. This is because Ford does not want its factory authorized repair facilities to attempt to repair the defect. Furthermore, the nature of the Emissions Defect is such that each Class Vehicle suffers from the Emissions Defect. No diagnosis is necessary; the Emissions Defect exists. Ford is violating the terms of the Ford Warranty and the Emissions Warranty.

27.     Fairway is not allowed to make repairs relating to the Emissions Defect. Further, pursuant to the terms of the Ford Warranty, there would be no payment to Fairway by Ford even if the Emissions Defect was diagnosed, because Ford had specifically instructed its dealerships to not make a repair attempt. As a result, Fairway performed a feigned attempted diagnosis, charged Hoffman for the feigned attempted diagnosis, because Ford was certainly not going to pay for the feigned diagnosis, and returned the Hoffman Vehicle to Hoffman, stating there was no defect. The lack of an effort to actually diagnose the problem is evident based upon a review of the repair record. The repair record stated that the fuel economy on the highway and city were monitored, however the repair record does not indicate how many miles the Hoffman Vehicle was test driven. Hoffman appears to have been billed only one hour for the diagnosis, and the Hoffman Vehicle was only with the Fairway for one day. Fairway clearly did not conduct a meaningful fuel consumption test.

28.     Hoffman's experience at Fairway is not unique. It is the systemic and widespread experience by Class Members who complain about the Emissions Defect. This result is due to Ford refusing to acknowledge the existence of the Emissions Defect to Class Members, and due to Ford instructing its authorized repair facilities to not attempt to repair the Emissions Defect. There is a systemic effort by Ford to dissuade its factory authorized repair facilities from diagnosing the Emissions Defect. This is because even if the problem is diagnosed, factory authorized repair facilities are not allowed to perform a repair, and the time spent diagnosing the problem will not result in the factory authorized repair facility receiving money from Ford.

29.     Plaintiff and other Class members have suffered damage as a result of Ford's wrongful, unfair, and unlawful conduct. Plaintiff seeks compensation for said damage.

30.     Plaintiff seeks injunctive relief, compelling Ford to provide coverage relating to the Emissions Defect, and compelling Ford to extend both the Emissions Warranty and the Ford Warranty until a time that Ford determines how to resolve the Emissions Defect.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

31.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

1    32.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure Rules

2    23(a), (b)(2) and (b)(3) on behalf of himself and members of the Class as defined below.

3    33.    Excluded from the Class are Defendant, and its subsidiaries and affiliates; its

4    current and former officers, directors, and employees (and members of their immediate

5    families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

6    34.    All claims alleged herein arise under California law for which Plaintiff seeks

7    relief authorized by California law.

8    35.    Plaintiff's proposed Class is defined as follows: All persons who purchased or

9    leased model year 2010 through 2012 Ford Fusion Hybrid, 2010 through 2011 Mercury Milan

10   Hybrid and the 2011 through 2012 Mercury MKZ Hybrid vehicles for which 13 California Code

11   of Regulations Sections 1962.1, 2035, 2037 and 20388 apply. (collectively referred to as "Class

12   Vehicles').

13   36.    Plaintiff's proposed Subclass consists of and is defined as follows: All Class

14   Members who incurred out-of-pocket expenses due to the Emissions Defect ("Subclass").

15   37.    Members of the Class and Subclass are referred to herein as "Class members."

16   38.    Plaintiff reserves the right to redefine the Class and Subclass and to add

17   subclasses as appropriate based on further investigation, discovery, and specific theories of

18   liability.

19   39.    Plaintiff also seeks injunctive relief compelling Ford to provide coverage relating

20   to the Emissions Defect, and to extend both the Emissions Warranty and the Ford Warranty

21   until Ford instructs its factory authorized repair facilities as to how to fix the Emissions Defect.

22   40.    As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are common questions

23   of law and fact common to the Class and those common questions predominate over any

24   questions affecting only individual issues. The common questions of fact and fact include:

25   (a)    Whether Ford has failed to comply with the terms of the Emissions Warranty;

26   (b)    Whether Ford has failed to comply with the terms of the Ford Warranty;

27

28

(c)     Whether Ford's conduct is resulting in the Class Members being wrongfully charged to diagnose whether or not Class Vehicle suffer from the Emissions Defect;

(d)     Whether the Emissions Defect exists;

(e)     Whether purchasers and lessees of Class Vehicles have suffered damage as a result of the Emissions Defect;

(f)     Whether Ford's conduct is an unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq*.;

(g)     Whether Plaintiff and Class members are entitled to injunctive relief requiring Ford to extend the Emissions Warranty and the Ford Warranty for the Class Vehicles relating to the Emissions Defect;

(h)     The appropriate amount of restitution, monetary penalties or damages resulting from Ford's violations of California law.

41.     There is a well-defined community of interest in the litigation and the Class Members are readily ascertainable:

(a)     Numerosity:  The Class Members are so numerous that joinder of all Class Members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

(b)     Typicality:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class Members as demonstrated herein.

(c)     Adequacy:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein.  Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts

1   or differences with any Class Member.  Plaintiff's attorneys, the proposed Class

2   counsel, are versed in the rules governing class action discovery, certification,

3   and settlement.  Plaintiff has incurred, and throughout the duration of this action,

4   will continue to incur costs and attorneys' fees that have been, are, and will be

5   necessarily expended for the prosecution of this action for the substantial benefit

6   of each Class Member.

7   (d)   Superiority:  The nature of this action makes the use of class action adjudication

8   superior to other methods. A class action will achieve economies of time, effort,

9   and expense as compared with separate lawsuits, and will avoid inconsistent

10  outcomes because the same issues can be adjudicated in the same manner and at

11  the same time for the entire class.

12  **TOLLING OF THE STATUTE OF LIMITATIONS**

13  42.   Ford has actively engaged in misleading and dishonest conduct relating to the

14  Emissions Defect, as set forth herein. Despite acting diligently, Plaintiff and Class Members

15  lacked the resources and had no realistic ability to identify existence of the Emissions Defect.

16  Plaintiff and Class Members cannot be reasonably expected on their own to learn or discover the

17  existence of the Emissions Defect. Therefore, the discovery rule is applicable to the claims

18  asserted by Plaintiff and Class Members, and the statute of limitations for bringing the claims

19  set forth herein should be tolled.

20  43.   Ford has actual and constructive knowledge that it is violating California law by

21  failing to honor the terms of the Emissions Warranty and the Ford Warranty. Ford has concealed

22  from Plaintiff and Class Members that Ford is violating California law as set forth herein. Any

23  applicable statute of limitation is tolled by Ford's knowledge, active concealment, and wrongful

24  conduct set forth herein. Ford is further estopped from relying on any statute of limitation

25  because of its concealment set forth herein.

26

27

28

CLASS ACTION COMPLAINT

**FIRST CAUSE OF ACTION**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

44.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

45.    California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Ford has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

46.    The UCL imposes strict liability. Plaintiff need not prove that Ford intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

47.    Ford is a "person" as defined by Business & Professions Code § 17201.

48.    As a direct and proximate result of Ford's acts and practices in violation of the UCL, Plaintiff and the Class Members have suffered injury in fact and lost money or property as set forth above and will continue to do so.

**Unlawful Prong**

49.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

50.    The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

51.    Ford's conduct is unlawful because it violates the California Code of Regulations, by failing to provide coverage under the Emissions Warranty. This unlawful conduct is done on a classwide basis.

52.    Plaintiff and members of the Class have suffered injury in fact and a loss of money or property as a result of Ford's unlawful conduct as set forth in detail.

53.    Ford's' acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**Unfair Prong**

54.     An act or act or practice is unfair if the injury is substantial, is not outweighed by any countervailing benefits to the public or to competition and is not an injury the public could reasonably have avoided. An act or practice also is unfair if it offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.  Ford's conduct violates all of these definitions.

55.     As alleged above, Ford engages and has engaged in a systematic business practice of failing to comply with its obligations under the Emissions Warranty and the Ford warranty. Ford does this in an effort to reduce the amount of money that Ford spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful and unfair conduct. If Ford complied with the Emissions Warranty and the Ford Warranty, Ford would encourage rather than dissuade the diagnosis and repair of the Emissions Defect, Ford would be honest with Class Members regarding the existence of the Emissions Defect, and Ford would extend the warranty relating the Emissions Defect. Ford unfairly refuses to fulfill its obligations for the sole purpose of saving money.

56.     Plaintiff and members of the Class have suffered injury in fact and a loss of money or property as a result of Ford's unfair business acts and practices as set forth in detail.

57.     Ford's unfair conduct as set forth herein is a uniform, and systematic statewide business practice on the part of Ford to minimize the amount of money that Ford has to pay out in warranty claims. This conduct violates California law.

58.     All of the acts and practices of Ford as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff suffered injury in fact and a loss of money or property as a result of Ford's unfair business acts and practices. It is Plaintiff's information and belief that Class members have also suffered injury as a result of Ford's wrongful conduct.

59.     Ford's conduct does not benefit the Class Members or competition. Plaintiff and Class members could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Ford's conduct only benefits Ford, by enabling Ford to avoid having to pay warranty claims which should be covered by the Emissions Warranty and the Ford Warranty.

60.     The gravity of the consequences of Ford's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

61.     Ford's conduct offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, and is substantially injurious to the public, for the reasons set forth above.

62.     To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Ford's justification and motives for its conduct, and as to the impact of Ford's conduct on Plaintiff and Class members.

63.     Ford's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**<u>Deceptive Prong</u>**

64.     Ford engages and has engaged in a systematic business practice of concealing and denying the existence of the Emissions Defect from Class Members, even when Class Members complain about the Emissions Defect.

65.     Said conduct is a statewide systematic business practice on the part of Ford to minimize the amount of money that Ford has to pay out in warranty claims. This conduct violates California law.

66.     Ford's conduct is likely to deceive an ordinary Class Member, because Ford is engaging in an active concealment of a known problem, and instructing its factory authorized repair facilities to not attempt repairs. Instructing the factory authorized repair facilities to not attempt to repair the Emissions Defect strongly discourages the factory authorized repair facilities from diagnosing the existence of the Emissions Defect. As a result, due to Ford's concealment of the problem, Class Members are misled, wrongfully denied warranty coverage, and even charged a diagnosis fee. The wrongful denial is done with the specific intent by Ford to avoid having to pay warranty claims.

67.     Plaintiff and the Class Members have justifiability relied on the conduct of the Ford authorized repair facilities, done at the direction of Ford. As a result, Class Members have incurred diagnostic fees, have been denied warranty coverage, and have suffered other damage.

68.     Ford is fully aware of its obligations pursuant to the Emissions Warranty and Ford Warranty. However, in derogation if its legal obligations, Ford conceals from Class Members the true facts relating to the Emissions Defect, in order to reduce the amount of money that Ford has to pay in warranty claims. Ford has a duty to abstain from this wrongful conduct.

69.     The facts concealed and not disclosed by Ford to Plaintiff and members of the Class are material. Had Plaintiff and the Class Members known the truth about the Warranty Defect, Plaintiff and the Class Members would have refused to pay diagnosis fees, and would have insisted on Ford providing warranty coverage relating to the Emissions Defect, regardless of Ford's current efforts to try to develop a cost effective-remedy. As a result, Plaintiff and members of the Class have suffered damage.

70.     Ford continues to engage in said fraudulent and deceitful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against Ford as follows:

1.     For an order certifying this case as a class action, appointing Plaintiff as the representative of the Class and Subclass, and appointing counsel for Plaintiff as Class Counsel;

2.     That the Court declare, adjudge and decree that that Ford is financially

responsible for notifying all Class members about the wrongful conduct set forth herein;

3.    That the Court declare, adjudge and decree that that Ford's failure to provide Emissions Warranty coverage and Ford Warranty coverage constitutes an unfair and unlawful business practice in violation of California Business and Professions, Civil Code sections 17200, *et seq.*

4.    For an order enjoining Ford from further deceptive practices, compelling Ford to provide Emissions Warranty coverage and Ford Warranty Coverage relating to the Emissions Defect.

5.    For an award to Plaintiff and Class members of compensatory and statutory damages as appropriate, including interest, in an amount to be proven at trial;

6.    For an award to Plaintiff and Class members of any repair costs they are owed;

7.    For a declaration that Ford must disgorge, for the benefit of Plaintiff and Class members, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiff and Class members;

8.    For the appointment of a receiver as necessary to receive, manage and distribute any and all funds disgorged from Ford and determined to have been wrongfully acquired by Ford as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

9.    For an award of attorneys' fees and costs, as allowed by law;

10.   For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

11.   For an award of pre-judgment and post-judgment interest;

12.   For leave to amend the Complaint to conform to the evidence produced at trial; and,

13.   For injunctive relief, compelling Ford to provide coverage relating to the Emissions Defect, and compelling Ford to extend the Ford Warranty and the Emissions Warranty until Ford instructs it authorized repair facilities how to repair the Emissions Defect.

14.   For all other relief as may be appropriate under the circumstances.

1    Date:   May 4, 2020                          Respectfully submitted,

2

3                                                 **THE LAW OFFICE OF ROBERT L. STARR**

4                                                 /s/ Robert Starr
                                                  _____
5                                                 Attorney for Plaintiff

6

7    Jury Demand

8    Plaintiff demands a jury trial pursuant to Fed. R. Civ. Pro. 38.

9    Date:   May 4, 2020                          /s/ Robert Starr
                                                  _____
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT